Jason D. Haymore (Utah No. 13236)
Brandon Sipherd (Utah No. 17910)
**PEARSON BUTLER, LLC**
1802 South Jordan Parkway, Suite 200
South Jordan, UT 84095
Telephone: 801.495.4104
JasonH@pearsonbutler.com
brandon@pearsonbutler.com
*Attorneys for Plaintiff*

## UNITED STATES COURT DISTRICT OF UTAH
## CENTRAL DIVISION, STATE OF UTAH

| | |
|---|---|
| ANHVU C. NGUYEN, an individual, | **COMPLAINT AND JURY DEMAND** |
| Plaintiff, | |
| vs. | Case No. 2:22-cv-00138-JNP |
| CORPORATION OF WESTERN GOVERNORS UNIVERSITY, a Utah Corporation, | Honorable Judge Jill N. Parrish |
| Defendant. | |

Plaintiff Anhvu C. Nguyen, by and through undersigned counsel, hereby submits this Complaint and Jury Demand against Defendant Corporation of Western Governors University as follows:

### INTRODUCTION

1. This is a proceeding to redress unlawful employment practices committed by Defendant Corporation of Western Governors University on the basis of failing to adequately protect Plaintiff from acts race discrimination, religious discrimination, and retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*, and 42 U.S.C. § 1981a(b)(1), as amended, and 42 U.S.C. § 1988, as amended, as well as negligent

supervision and retention, and obtain appropriate relief for Plaintiff. The conduct created a hostile work environment for Plaintiff.

2. This is a proceed to redress and seek damages and injunctive relief for copyright infringement under the copyright law of the United States (17 U.S.C. § 101 *et. seq.*). As set forth in greater detail below, this action involves the unauthorized use and copying of Global Employment Ready Education (hereinafter "GERE"), the intellectual property of Plaintiff, by Defendant. GERE is an innovative product designed to bridge the gap between education and employment by combining hands-on learning and on-the-job training typically considered as apprenticeship and internship. GERE has three distinct components: Learn from the Pros, Learn by Doing, and Learn and Earn. GERE has significant value and has been produced and created with considerable time and expense to Plaintiff.

## PARTIES

3. Plaintiff is an individual who resides in Clackamas County, Oregon.

4. Defendant Corporation of Western Governors University is a Utah corporation headquartered in Salt Lake County, Utah and had more than fifteen (15) employees during all relevant times.

## JURISDICTION AND VENUE

5. This action is brought pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*, for unlawful race discrimination, religious discrimination, and unlawful employment retaliation under 42 U.S.C. § 1981a(b)(1), as amended, 42 U.S.C. § 2000e *et seq.*, and 17 U.S.C. § 101 *et seq.* for copyright infringement.

6. Subject matter jurisdiction is proper in this Court pursuant to 42 U.S.C. § 2000e-5, 28 U.S.C. §§ 1331, 1338(a), 1343, 42 U.S.C. §§ 1981 *et seq.*, and 42 U.S.C. § 1988, as amended, in that this action arises under federal law, specifically Title VII of the Civil Rights Act of 1964, as amended, and 17 U.S.C. § 101 *et seq.*

7. The Court has pendant jurisdiction over the state and common law claims pursuant to 28 U.S.C. § 1367.

8. Equitable and other relief are also sought under 42 U.S.C. § 2000e-5(g).

9. Venue is proper under 42 U.S.C. §2000e-5(f) and 28 U.S.C. §1391, as the unlawful employment discrimination and retaliation giving rise to Plaintiff's claims were committed within the jurisdiction of this Court.

10. Plaintiff's causes of action arose at the latest on or about March 29, 2021, in Salt Lake County, Utah.

11. Plaintiff has fulfilled all conditions precedent under Title VII of the Civil Rights Act of 1964, as amended, prior to instituting this lawsuit and has fulfilled all obligations to exhaust his administrative remedies.

12. On or about October 19, 2019, Plaintiff filed a Charge of Discrimination against Defendant Corporation of Western Governors University alleging unlawful race discrimination, religious discrimination, and retaliation with the Equal Employment Opportunity Commission ("EEOC") and the Labor Commission of Utah, Anti-Discrimination Division. *See* Plaintiff's **Exhibit A**.

13. On or about December 2, 2021, the EEOC issued a Right to Sue Letter for Plaintiff's Charge of Discrimination. *See* Plaintiff's **Exhibit B**.

//

## FACTUAL ALLEGATIONS

14. On or around August 26, 2019, Plaintiff began working for Defendant Corporation of Western Governors University ("Defendant") to help build and launch 10X Entities.

15. Plaintiff reported directly to Matt Sanders, Senior Vice President.

16. Upon Plaintiff's hire, Mr. Sanders represented that Plaintiff's role would allow him to become CEO/GM with significant equity opportunity.

17. Due to Mr. Sanders' representations about the position, Plaintiff accepted the role at a significantly lower compensation than other opportunities he was considering at the same time.

18. Despite Mr. Sanders' representations, Defendant failed to provide Plaintiff with a board-approved mandate or investment, resources, processes, and talent to support such initiatives, effectively setting Plaintiff up to fail.

19. Due to Mr. Sanders' representations that Plaintiff would share in significant equity opportunity, Plaintiff brought GERE, his own innovation and intellectual property, and all of its related intellectual property to Defendant, which Plaintiff had developed prior to his employment with Defendant.

20. While employed by Defendant, Plaintiff continued to work on GERE, completing proof of concept on March 30, 2020. Plaintiff completed a short pilot for GERE on May 20, 2020. Then, on March 22, 2021, Plaintiff launched a full pilot for GERE.

21. By March 29, 2021, it became apparent that GERE was feasible, as evidenced by the interest it had received from multiple companies and employment agencies. In fact, many of those interest companies and employment agencies were in the process of negotiating formal agreements to implement GERE when Defendant abruptly terminated Plaintiff.

22. After Defendant terminated Plaintiff, Defendant continues to retain and develop GERE without Plaintiff's permission and without compensating Plaintiff for retaining and using his intellectual property.

23. Upon information and belief, Defendant now refers to GERE as "ReadyTrack."

24. During the course of Plaintiff's employment, Plaintiff was subjected to egregious, numerous, and concentrated acts of unlawful harassment, discrimination, and retaliation based on race and religion by Defendant, including, but not limited to, offensive comments and remarks. Defendant's harassment, discrimination, and retaliation had the purpose and effect of unreasonably interfering with Plaintiff's work performance and/or created an intimidating, hostile, or offensive work environment for Plaintiff.

25. Mr. Sanders had a cavalier attitude towards race and would publicly embrace derogatory racial stereotypes.

26. Plaintiff is Vietnamese and, in or around November 2019, Mr. Sanders asked Plaintiff why he was growing out his facial hair. When Plaintiff responded that he was trying to fit in for an upcoming business trip to Doha, Qatar, Mr. Sanders replied, "Don't worry. They have beards because they don't have balls."

27. When Mr. Sanders asked for input on the subject of diversity for team meetings, Plaintiff suggested that Asians should be included in the discussion. Mr. Sanders not only rejected Plaintiff's suggestion, but Mr. Sanders stated that the team would only discuss Black Lives Matter but not the subject of violence against Asians in America.

28. In or around February 2020, during a department meeting shortly before the COVID-19 lockdown, Mr. Sanders commented, while looking directly at Plaintiff, that eating bats should be outlawed.

29. Mr. Sanders' unwanted and unlawful acts occurred while he was acting within the course or scope of his employment with Defendant, and/or Defendant was negligent or reckless by failing to remedy or prevent Mr. Sanders' continued harassment and discrimination of Plaintiff, of which Defendant knew or should have known.

30. Plaintiff was treated differently than his similarly situated co-workers because he was not a member of the Church of Jesus Christ of Latter-Day Saints, the predominate religion among Plaintiff's co-workers, including being ignored and excluded from various employment-related activities because Plaintiff was not a member of the Church of Jesus Christ of Latter-Day Saints.

31. Moreover, during department and university-wide meetings, Mr. Sanders and other senior leaders would discuss their faith and religious beliefs, leaving Plaintiff feeling isolated and left out.

32. In or around August 2020, Plaintiff and co-worker complained multiple times to Mr. Sanders about being treated unfairly and differently than their similarly situated co-workers because of their race and ethnicity.

33. Plaintiff met with Mr. Sanders on multiple occasions to discuss these complaints.

34. Plaintiff also complained to Crystal McFarland, Senior Manager of Human Resources, regarding being treated unfairly and differently than similarly situated co-workers because of his race and religion.

35. Mr. Sanders and Ms. McFarland not only ignored Plaintiff's complaints of discrimination and harassment, but they failed to take any action to investigate or address them.

36. After Plaintiff complained, Mr. Sanders excluded Plaintiff from important meetings and discussions, including discussions about the organizational chart.

37. In or around November 2020, during a lunch meeting before Thanksgiving, Mr. Sanders asked Plaintiff why most Asians did not seem to be sick with COVID-19. Mr. Sanders also asked Plaintiff if Asians have an existing virus or immunity to COVID-19.

38. From July 2020 onward, Plaintiff requested on at least six (6) occasions to meet with Mr. Sanders to discuss his FY21 budget. Mr. Sanders did not meet with Plaintiff and refused to allow Plaintiff access to FY21 budgets despite the fact Plaintiff's colleagues had access to those budgets. As a result, Plaintiff was the only team leader excluded from having oversight over his team's budget.

39. Mr. Sanders held Plaintiff to a higher standard than other similarly situated employees. For example, other co-workers at Plaintiff's level and below had access to company purchasing cards. When Plaintiff requested access to a company purchasing card, Mr. Sanders refused without providing any justification. As a result, Plaintiff had to make purchases using his own credit cards and was required to ask for permission to make any purchases and file time-consuming expense reports with Defendant for reimbursement.

40. Moreover, Mr. Sanders required Plaintiff to seek grants and outside philanthropic funding to finance GERE when other similarly situated team members were not required to do so for their respective projects.

41. On March 29, 2021, Defendant terminated Plaintiff.

42. After terminating Plaintiff, Defendant replaced Plaintiff with an individual who is a member of the Church of Jesus Christ of Latter-Day Saints.

43. The unlawful acts of harassment, discrimination, and retaliation by Defendant's agents/employees, engaged in by Defendant's agents and/or employees, occurred when Defendant's agents and/or employees were acting within the course or scope of their

employment and/or Defendant was negligent or reckless by failing to remedy or prevent its agents and/or employees from unlawfully harassing, discriminating, or retaliating against Plaintiff.

44. Defendant willfully and maliciously engaged in a discriminatory practice or practices, and/or demonstrated a reckless indifference to Plaintiff's federally protected rights not to be subject to unlawful harassment, discrimination, and retaliation under Title VII of the Civil Rights Act of 1964.

45. Defendant owed Plaintiff a duty that Defendant could have reasonably expected, consistent with the practical realities of an employer-employee relationship, to appreciate the threat of the continued harassment and discrimination of Plaintiff and to act to minimize or protect Plaintiff against the continued harassment and discrimination.

46. Defendant breached the duty it owed to Plaintiff by and through its agents/employees who were acting within the course and scope of their employment, failed to adequately supervise and/or retain Mr. Sanders to prevent the continued harassment and discrimination of Plaintiff by Mr. Sanders.

47. As a direct and proximate cause of Defendant's breach, Plaintiff suffered damages, including, but no limited to, termination.

48. Defendant, acting by and through its agents and/or employees, intentionally or recklessly engaged in intolerable and outrageous unlawful harassment, discrimination, and retaliation, that directly and proximately caused Plaintiff to suffer severe emotional distress.

## FIRST CAUSE OF ACTION
*Unlawful Race Discrimination in Violation of the Civil Rights Act of 1964, as Amended, 42 U.S.C. § 2000e et seq.*

49. Plaintiff realleges all preceding paragraphs as if stated fully herein.

50. Plaintiff is a member of a protected class based on his race, as he is Vietnamese.

51. Defendant employed more than fifteen (15) employees at all relevant times and is, therefore, an "employer as that term is defined in 42 U.S.C. §12111(5)(A).

52. Plaintiff was qualified for his job and was performing his job in, at least, a satisfactory manner.

53. Despite Plaintiff qualifications and performance, similarly situated white employees or non-Vietnamese employees were treated more favorably based on their race, as those employees were not subjected to unlawful race discrimination or unlawful retaliation in violation of Title VII of the Civil Rights Act of 1964.

54. As a direct and proximate result of Plaintiff's race discrimination, Plaintiff suffered damages, including, but not limited, termination, loss of future employment, loss of benefits, lost wages, medical expenses, severe emotional distress, pain and suffering, and humiliation, in an amount to be determined at trial.

### SECOND CAUSE OF ACTION
*Unlawful Religious Discrimination in Violation of the Civil Rights Act of 1964, as Amended,*
*42 U.S.C. § 2000e et seq.*

55. Plaintiff realleges all preceding paragraphs as if stated fully herein.

56. Plaintiff is a member of a protected class based on his religion, as he is Catholic.

57. Defendant employed more than fifteen (15) employees at all relevant times and is, therefore, an "employer as that term is defined in 42 U.S.C. §12111(5)(A).

58. Plaintiff was qualified for his job and was performing his job in, at least, a satisfactory manner.

59. Despite Plaintiff qualifications and performance, similarly situated employees who were members of the Church of Jesus Christ of Latter-Day Saints were treated more favorably

based on their religion, as those employees were not subjected to unlawful religious discrimination or unlawful retaliation in violation of Title VII of the Civil Rights Act of 1964.

60. As a direct and proximate result of Plaintiff's religious discrimination, Plaintiff suffered damages, including, but not limited, termination, loss of future employment, loss of benefits, lost wages, medical expenses, severe emotional distress, pain and suffering, and humiliation, in an amount to be determined at trial.

### THIRD CAUSE OF ACTION
*Unlawful Retaliation in Violation of the Civil Rights Act of 1964, as Amended,*
*42 U.S.C. § 2000e et seq.*

61. Plaintiff realleges all preceding paragraphs as if stated fully herein.

62. As a direct and proximate result of Plaintiff's complaints of race and religious discrimination, Defendant unlawfully retaliated against Plaintiff, in violation of Title VII of the Civil Rights Act of 1964, as amended, by terminating Plaintiff's employment.

63. As a direct and proximate result of Defendant's retaliation against Plaintiff, Plaintiff suffered damages, including, but not limited, termination, loss of future employment, loss of benefits, lost wages, medical expenses, severe emotional distress, pain and suffering, and humiliation, in an amount to be determined at trial.

64. These unlawful actions of retaliation by Defendant's agents/employees occurred when these agents/employees were acting within the course and scope of their employment with Defendant, and/or Defendant was negligent or reckless by failing to remedy or prevent its agents/employees from unlawfully retaliating against Plaintiff.

### FOURTH CAUSEOF ACTION
*Exemplary Damages Under 42 U.S.C. § 1981a(b)(1) and 42 U.S.C. § 1988, as Amended.*

65. Plaintiff realleges all preceding paragraphs as if stated fully herein.

66. Defendant willfully and maliciously engaged in a discriminatory practice or practices and/or demonstrated a reckless indifference to Plaintiff's federally protected rights not to be subject to harassment, discrimination, and retaliation under Title VII of the Civil Rights Act of 1964, as amended; therefore, punitive damages should be awarded to Plaintiff under 42 U.S.C. § 1981a(b)(1), as amended, and 42 U.S.C. § 1988, as amended, in an amount to be determined at trial.

## FIFTH CAUSE OF ACTION
*Negligent Supervision and Retention*

67. Plaintiff realleges all preceding paragraphs as if stated fully herein.

68. Defendant owed a duty to Plaintiff as Defendant could have reasonably expected, consistent with the practical realities of an employer-employee relationship, to appreciate the threat of Matt Sanders' continued harassment and discrimination of Plaintiff and to act to minimize or protect Plaintiff against continued harassment and discrimination.

69. Defendant breached its duty, acting by and through its agents/employees who were acting within the course and scope of their employment, when it failed to adequately supervise and/or retain Matt Sanders to prevent the continued harassment and discrimination of Plaintiffs by Matt Sanders.

70. As a direct and proximate cause of Defendant's breach, Plaintiff suffered damages, including, but not limited to, termination, loss of future employment, loss of benefits, lost wages, medical expenses, severe emotional distress, pain and suffering, and humiliation, in an amount to be determined at trial.

## SIXTH CAUSE OF ACTION
*Intentional Infliction of Emotional Distress*

71. Plaintiff realleges all preceding paragraphs as if stated fully herein.

72. Defendant, acting by and through its agents and/or employees, intentionally or recklessly engaged in, or permitted, intolerable and outrageous unlawful harassment, discrimination, and retaliation.

73. Defendant intentionally acted to harass Plaintiff by taking any and all actions within its ability to harass, discriminate, and retaliate against Plaintiff, and to terminate his employment.

74. Defendant's actions were undertaken for the express purpose of inflicting emotional distress upon Plaintiff and placing an undue hardship upon Plaintiff.

75. Defendant's actions did, in fact, cause Plaintiff severe emotional distress.

76. As a direct and proximate consequence of these violations by Defendant, Plaintiff suffered severe emotional distress and have been damaged and will be continue to be damaged for which Defendant is liable, including, but limited to, Plaintiff's lost compensation, emotional pain, suffering, inconvenience, mental anguish, and other nonpecuniary losses in an amount to be determined at trial.

## SEVENTH CAUSE OF ACTION
*Negligent Infliction of Emotional Distress*

77. Plaintiff realleges all preceding paragraphs as if stated fully herein.

78. Defendant owed a duty of care to Plaintiff to refrain from and protecting him from employees making harassing and/or discriminatory comments, to refrain from engaging in harassing and/or discriminatory behaviors and actions, and to refrain from creating an unreasonable risk of causing serve emotional harm to Plaintiff.

79. Defendant, in engaging in harassing, discriminatory, and retaliatory behavior, and terminating Plaintiff after he complained of such, acted with reckless disregard to the probability of causing Plaintiff's emotional distress.

80. Defendant, in engaging in harassing, discriminatory, and retaliatory behavior, and terminating Plaintiff after he complained of such, breached the duty of care it owed Plaintiff.

81. As a direct and proximate result of Defendant's actions, Plaintiff suffered severe emotional harm, including depression, anxiety, feelings of worthlessness, and other emotional harms to be proven at trial.

## EIGHTH CAUSE OF ACTION
*Breach of the Implied Covenant of Good Faith and Fair Dealing*

82. Plaintiff realleges all preceding paragraphs as if stated fully herein.

83. Every employment relationship in Utah contains an implied covenant of good faith and fair dealing.

84. After Plaintiff complained of unwanted harassment and discrimination, Plaintiff was abruptly terminated.

85. Defendant's actions were done in bad faith and constitute a breach of the implied covenant of good faith and fair dealing.

## NINTH CLAIM FOR RELIEF
*Promissory Estoppel*

86. Plaintiff realleges all preceding paragraphs as if stated herein.

87. Defendant promised Plaintiff employment at Defendant under a promise of significant equity.

88. Defendant knew or should have expected that this promise would lead Plaintiff to accept and continue his employment with Defendant under the promise of significant equity.

89. Plaintiff reasonably relied on Defendant's promise of compensation and/or equity and course of conduct and Plaintiff continued to serve Defendant.

90. Defendant's actions resulted in damages in an amount to be proven at trial.

## TENTH CLAIM FOR RELIEF
*Conversion*

91. Plaintiff realleges all preceding paragraphs as if stated herein.

92. Plaintiff has the legal right of possession over his intellectual property.

93. Defendant's deliberate and intentional retention of Plaintiff's intellectual property without any compensation constitutes wrongful of property that legally belongs to Plaintiff.

94. Defendant's unlawful actions have permanently deprived Plaintiff of the use and benefits of his intellectual property.

95. Plaintiff has demanded that Defendant return his intellectual property or adequately compensate him for retaining possession of his intellectual property.

96. Defendant's refusal to return or compensate Plaintiff for his intellectual property constitutes the tort of conversion.

97. Plaintiff is entitled to recover the value of the converted amount, at least equal to the value of Plaintiff's intellectual property.

## ELEVENTH CLAIM FOR RELIEF
*Unjust Enrichment*

98. Plaintiff realleges all preceding paragraphs as if stated herein.

99. Defendant requested Plaintiff bring his intellectual property while providing services on Defendant's behalf.

100. Defendant received the benefit of Plaintiff's services and intellectual property.

101. Defendant appreciated and had knowledge of the services Plaintiff offered as well as his intellectual property.

102. Plaintiff conferred a benefit upon Defendant in the form of his labor and intellectual property.

103. Defendant failed to pay for the benefits it received from Plaintiff and his intellectual property.

104. Defendant retained the benefits of Plaintiff's services and intellectual property under circumstances that would make it unjust for Defendant to do so.

105. Plaintiff is entitled to recover the value of the benefit his labor and intellectual property conferred upon Defendant measured by the value of Plaintiff's intellectual property.

### TWELFTH CLAIM FOR RELIEF
*Copyright Infringement*

106. Plaintiff realleges all preceding paragraphs as if stated herein.

107. Plaintiff developed GERE and all related intellectual property, his own innovation and intellectual property, prior to his employment with Defendant.

108. Plaintiff brought GERE and all related intellectual property with him when he started his employment with Defendant.

109. While employed by Defendant, Plaintiff continued to work on GERE, completing proof of concept on March 30, 2020, completing a short pilot on May 20, 2020, and launching a full pilot on March 22, 2021.

110. At all relevant times, Plaintiff has been the holder of pertinent exclusive rights infringed by Defendant, as alleged hereunder, including, but not limited to, GERE and any derivative works.

111. Defendant, without permission or consent of Plaintiff, has copied, appropriate, used, and implemented GERE and any derivative works. On information and belief,

Defendant had a right and ability to supervise production of the infringement of GERE and had a direct financial interest in such activities.

112. On information and belief, Defendant had knowledge of the infringing activity and induced, caused, or materially contributed to the infringing conduct.

113. Defendant has violated Plaintiff's exclusive rights of use and distribution.

114. Defendant's actions constitute infringement of Plaintiff's exclusive rights of use and distribution.

115. Defendant's actions constitute infringement of Plaintiff's exclusive rights protected under the Copyright Act 17 U.S.C. § 106 because it used, distributed, and profited off of GERE.

116. On information and belief, Defendant deliberately used and/or distributed GERE. On information and belief, Defendant utilized the Internet for unlawful purpose of viewing and distributing copyrighted materials. On information and belief, Defendant directly, contributorily, and/or vicariously infringed on GERE.

117. The foregoing acts of infringement constitute a willful, intentional disregard of and with indifference to the rights of Plaintiff.

118. Due to Defendant's infringement of Plaintiff's exclusive rights under copyright, Plaintiff is entitled to relief pursuant to 17 U.S.C. § 504 and to his attorneys' fees and costs pursuant to 17 U.S.C. §505.

119. The conduct of Defendant is causing and, unless enjoined and restrained by this Court, will continue to cause Plaintiff irreparable injury. Plaintiff has no other adequate remedy at law. Pursuant to 17 U.S.C. §§ 502 and 503, Plaintiff is entitled to injunctive relief prohibiting Defendant from further infringing Plaintiff's copyright and ordering that

Defendant turn over to the court and/or destroy all unauthorized copies of GERE and all derivative and/or related works.

## REQUEST FOR JURY TRIAL

WHEREFORE, Plaintiff requests that this matter be tried before a jury.

## PRAYER FOR RELIEF

WHEREFORE, as a result of the foregoing allegations and causes of actions, Plaintiff is entitled to judgement, as follows:

a. For an award of compensatory damages, both special and general damages suffered, which will be shown at the time of trial;

b. For an award of damages for Plaintiff's emotional distress resulting from Defendant's discrimination, disparate impact, and outrageous conduct;

c. For an award of equitable damages to Plaintiff and for other future pecuniary losses pursuant to 42 U.S.C. § 1981a and other provisions.

d. For an award of punitive and exemplary damages to Plaintiff pursuant to 42 U.S.C. § 1988 and other provisions.

e. For entry of permanent injunctions providing that Defendant shall be enjoined from directly or indirectly infringing Plaintiff's rights in GERE and all related intellectual property, including without limitation by using the Internet to advertise any item containing GERE, or reproduce additional items containing GERE, or any further use of GERE at all, except with the express authority of Plaintiff. Defendant shall also destroy any and all physical items, digital, or other copies of GERE and any derivative and/or related works in its possession, custody or control.

    f. In favor of Plaintiff against Defendant that Defendant has: 1) willfully infringed on Plaintiff's rights pursuant to 17 U.S.C. § 501; and 2) otherwise injured the business of Plaintiff by Defendant's act and conduct set forth in this Complaint.

    g. In favor of Plaintiff against Defendant for actual damages and statutory damages pursuant to 17 U.S.C. § 501 and 17 U.S.C. § 1203, at the election of Plaintiff, in an amount to be determined at trial.

    h. For all attorneys' fees and costs, including expert witnesses.

    i. For such other and further relief as the Court deems just, equitable, and proper.

DATED this 28th day of February, 2022.

                                               */s/ Brandon Sipherd*
                                               Brandon Sipherd
                                               Jason D. Haymore
                                               Attorney for Plaintiff